IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    31 Hopkins Plaza #1432<br>    Baltimore, MD 21201<br><br>              Plaintiff,<br><br>v.<br><br>AMMA INVESTMENT GROUP, LLC,<br>    120 N. 44th Street, Suite 410<br>    Phoenix AZ 85034<br><br>and<br><br>MARYLAND HEALTH MANAGEMENT, LLC,<br>d/b/a NATURE'S MEDICINES,<br>    10169 Baltimore National Pike<br>    Ellicott City, Howard County, MD 21042<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br><br>**JURY TRIAL REQUESTED** |

COMPLAINT

**Nature of the Action**

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Charging Party Russell Hicks ("Hicks") and other similarly aggrieved individuals who were adversely affected by such practices. As alleged with greater particularity below, Defendants AMMA Investment Group, LLC ("AMMA") and Maryland Health Management, LLC d/b/a Nature's Medicines ("MHM") (collectively "Defendants") unlawfully discriminated against Hicks and other similarly aggrieved employees on the basis of their sex by subjecting them to

1

continuous sexual harassment and a sexually hostile work environment by their manager, even after a number of employees had complained about his behavior.

## Jurisdiction and Venue

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland, Northern Division.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission ("the Commission"), is the agency of the United States charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant MHM, a Maryland limited liability company, has been continuously been doing business in Ellicott City, Howard County, Maryland, doing business as Nature's Medicines and operating a medical cannabis dispensary at 10169 Baltimore National Pike ("Ellicott City location").

5. At all relevant times Defendant MHM has had at least 15 employees.

6. At all relevant times, Defendant MHM has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

7. At all relevant times, Defendant AMMA, an Arizona limited liability company, has continuously been doing business in Ellicott City, Maryland, including performing human resources and payroll functions for the Ellicott City MHM location, and, upon information and belief, at least 10 other Nature's Medicines stores across the country. Defendant AMMA and Defendant MHM jointly exercised control over the employees at the Ellicott City location, and upon information and belief, AMMA and MHM share common ownership and control, and common management.

8. At all relevant times Defendant AMMA has had at least 15 employees.

9. At all relevant times, Defendant AMMA has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

10. Regarding the operation of the Ellicott City location, Defendants AMMA and MHM function as an integrated enterprise/single employer or, in the alternative, function as joint employers.

## ADMINISTRATIVE PROCEDURES

11. More than thirty days prior to the institution of this lawsuit, Russell Hicks filed a Charge of Discrimination with the Commission alleging violations of Title VII by Defendants.

12. On April 28, 2020, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that they violated Title VII by subjecting Hicks and similarly aggrieved individuals to harassment based on their sex. The letter also invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

13.     The Commission engaged in communications with Defendants to provide them the opportunity to remedy the discriminatory practices described in the Letter of Determination.

14.     The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

15.     On August 4, 2020, the Commission issued to Defendants a Notice of Failure of Conciliation.

16.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

17.     Since at least July 2018, Defendants engaged in unlawful employment practices at their Elicott City, Maryland facility in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1), by subjecting Hicks to sexual harassment and a sexually hostile work environment.  The unlawful practices include, but are not limited to, the following:

   a.     Hicks was employed as a Patient Service Provider ("PSP") from around July 2018 until August 8, 2019.  Hicks directly reported to General Manager Andrew Thomson ("Thomson").  As part of his job duties, Hicks would stock display cases, interact with customers by recommending products and answering questions, and ring up sales.

   b.     Hicks is gay, and Thomson knew about Hicks's sexual orientation.

   c.     Thomson told Hicks that Hicks was a "cute motherfucker," and would sing impromptu songs to him with made up lyrics such as, "Russell, I want to bang you; you're so beautiful."

   d.     On one occasion, as he passed Hicks in the workplace, Thomson grabbed Hicks's left buttock and made a "boop" noise, and then a minute later, returned, put his hands on Hicks's shoulders, and stated, "Hey, you know I was just joking a minute ago."

e.  Another time, Thomson, in graphic detail, described to Hicks an experience of a woman licking his anus.

f.  Thomson did not direct similar behavior to straight male employees.

g.  In Hicks's presence, Thomson also engaged in sexualized behavior and made sexual comments about female employees.  Hicks observed Thomson press his body against female employees, put his hands on their shoulders, and whisper in their ears.

h.  Also in Hicks's presence, Thomson made sexual comments about other PSPs such as Cassandra Barrett ("Barrett") and Shannon McGowan ("McGowan").  Thomson told Hicks that he would "tear up" Barrett, and that he wanted to have a fun night with McGowan.

i.  Thomson also told Hicks he liked to "have a semi," meaning a partially erect penis, in front of female customers, so they "knew what they were working with."

j.  Thomson also unsolicitedly showed Hicks a nude picture of a female from his phone.

k.  Hicks and the female employees who also were subjected to Thomson's sexually-charged conduct repeatedly told Thomson to stop his behavior, but Thomson ignored their protests and continued with his sexually-charged behavior.

l.  From at least July 2018 through about April 2019, Defendants did not have an anti-harassment or anti-discrimination policy.

m.  When Defendants did draft a policy in or around April 2019, the policy required victims of harassment to report it to either their supervisor, which in this case was the harasser Thomson, or their human resources department.  Defendants' anti-harassment policy failed to list any contact information for their human resources department, which was located out of state in Arizona, and managed by Defendant AMMA Investment Group, LLC.

   n.  Thomson made clear to his employees that he controlled their employment opportunities within the cannabis industry, thereby causing them to be fearful of formally complaining about him.

   o.  Thomson harassed Hicks regularly during the entire course of his employment with Defendants, with acts similar to those described above.

   18.  Since at least July 2018, Defendants engaged in unlawful employment practices at their Ellicott City, Maryland facility in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1), by subjecting a class of female employees, including but not limited to Cassandra Barrett ("Barrett") and Roilyn McWilliams ("McWilliams"), to sexual harassment and a sexually hostile work environment. The unlawful practices include, but are not limited to, the following:

   a.  Defendants employed Barrett as a PSP from around August 2018 through around June 2019.

   b.  Thomson, also Barrett's direct manager, shared with Barrett his fantasies of picturing customers naked and wanting to have sex with other female employees.

   c.  When Barrett occasionally changed into gym attire after her shift and before leaving for the day, Thomson made sexual remarks about Barrett in her gym attire, and on one occasion, groped her leg.

   d.  Thomson would also frequently comment to Barrett about how much he liked her "butt."

   e.  Thomson told Barrett that he had spoken about her with other male co-workers, and they all wanted to sleep with her.

   f.  Thomson would make Barrett and other employees research female job applicants

through their social media accounts so that he could assess their attractiveness before inviting them in for a job interview.  Thomson stated that he would not hire female applicants if they were "not attractive" or "not his type."

      g.      Thomson also commented to Barrett on the appearance of female customers and third-party vendors, including his speculation that one customer had made cosmetic enhancements to her breasts.  Thomson also made sexually-charged comments to a sales representative for a nearby cannabis processing facility during her sales visits to Defendants.  The sales representative asked Thomson to cease making inappropriate sexual comments to her, which he ignored.

      h.      Defendants employed McWilliams as a PSP from around June 2018 through October 2018.

      i.      Thomson, also McWilliams's direct supervisor, used sexually explicit language on a regular basis in her presence, including discussing how different people would look in various sexual positions, sexualizing the names of the strains of cannabis Defendants sold, and telling McWilliams that certain female customers, whom Thomson called "bitches," wanted to "hook up" with him.

      j.      Thomson harassed Barrett, McWilliams, and the class regularly during the entire course of their employment with Defendants, with acts similar to those described above.

      k.      McWilliams complained about Thomson's behavior to Thomson's direct supervisor, District Manager Jusmin Patel ("Patel"), in October 2018.  Patel also represented himself to the Ellicott City location's employees as a part-owner of Defendants.

      l.      In October 2018, McWilliams also complained about Thomson's sexually charged behavior to human resources, managed by Defendant AMMA Investment Group, LLC.

m.      Defendants took no action in response to McWilliams's complaints against Thomson.  As a result, Defendants allowed Thomson to target and harass additional victims while his employment continued.

n.      McWilliams resigned shortly thereafter, in late October 2018.

o.      In or about July 2019, after Defendants had drafted their anti-harassment policy described in Paragraph 17(m) above, at least one additional female employee resigned and walked out of the building in tears as a result of Thomson's sexual harassment.

p.      Upon information and belief, after the policy was implemented, this female employee lodged a complaint about Thomson's sexual harassment with human resources, managed by Defendant AMMA Investment Group, LLC.

q.      A number of additional female employees complained about Thomson's sexual harassment to Patel during the course of their employment, both before and after the policy was implemented.

r.      Even after implementing their anti-discrimination and anti-harassment policy, Defendants failed to abide by it, failed to take appropriate corrective action against Thomson, and failed to even initiate an investigation into Thomson's behavior.

s.      Defendants only investigated Thomson after they received notice of the Charge of Discrimination Hicks filed with the Commission in August 2019, and finally terminated Thomson in October 2019, a year after McWilliams first complained to human resources and Patel about Thomson's sexual harassment.

19.    The effect of the practices complained of in Paragraphs 17 and 18 deprived Hicks and a class of similarly aggrieved employees, including, but not limited to, Barrett and

McWilliams, of equal employment opportunities and otherwise adversely affected their status as employees, because of their sex.

20. The unlawful employment practices complained of in paragraphs 17 and 18 were intentional.

21. The unlawful employment practices complained of in paragraphs 17 and 18 were done with malice or with reckless disregard for the federally protected rights of Hicks, Barrett, McWilliams, and a class of similarly aggrieved employees.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, agents, servants, employees, and all persons in active concert or participation with them, from engaging in sexual harassment and other employment practices which discriminate on the basis of sex;

B. Order Defendants to institute and carry out training, policies, practices, and programs which provide equal employment opportunities based on sex, and which prevent sexual harassment and a sexually hostile work environment from occurring in the future, and which eradicate the effects of their past and present unlawful employment practices;

C. Order Defendants to make whole Hicks, Barrett, McWilliams, and a class of similarly aggrieved employees, by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of herein, including but not limited to emotional pain, suffering, depression, inconvenience, mental anguish, embarrassment, degradation, humiliation, and loss of enjoyment of life, in amounts to be determined at trial;

D. Order Defendants to pay Hicks, Barrett, McWilliams, and a class of similarly aggrieved employees, punitive damages for their malicious and reckless conduct described herein, in amounts to be determined at trial;

E. Grant such further relief as the Court deems necessary and proper in the public interest; and

F. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

SHARON F. GUSTAFSON
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

/s/ Debra M. Lawrence_____
DEBRA M. LAWRENCE
Regional Attorney, U.S. EEOC
Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (410) 801-6691
Fax: (410) 209-2221
debra.lawrence@eeoc.gov
District of Maryland Bar No. 04312

/s/ Maria Luisa Morocco_____
MARIA LUISA MOROCCO
Supervisory Trial Attorney, U.S. EEOC
Washington Field Office
131 M St., NE, 4th Floor
Washington, DC 20507
Phone: (202) 419-0724
Fax: (202) 419-0740
maria.morocco@eeoc.gov

Virginia Bar No. 94043

/s/ John S. Brubaker_____
JOHN S. BRUBAKER
Trial Attorney, U.S. EEOC
Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107-3127
Phone: (267) 589-9762
Fax: (215) 440-2848
john.brubaker@eeoc.gov
Illinois Bar No. 6314685